1   KAREN P. HEWITT
    United States Attorney
2   RANDY K. JONES
    Assistant U.S. Attorney
3   California State Bar No. 141711
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California  92101-8893
5   Telephone: (619) 557-5681
    randy.jones2@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        )   Criminal Case No. 08CR0447-H
                                     )
11              Plaintiff,           )   DATE:      April 1, 2008
                                     )   TIME:      2:00 p.m.
12       v.                          )
                                     )   UNITED STATES' RESPONSE AND
13  SCOTT STEVEN SCILAGYI,           )   OPPOSITION TO DEFENDANT'S
                                     )   MOTION TO:
14              Defendant.           )
                                     )   1)   DISMISS THE INDICTMENT FOR
15                                   )        GRAND JURY VIOLATION;
                                     )   2)   SUPPRESS STATEMENTS;
16                                   )   3)   COMPEL DISCOVERY/ PRESERVE
                                     )        EVIDENCE; AND
17                                   )   4)   GRANT LEAVE TO FILE FURTHER
                                     )        MOTIONS
18                                   )
                                     )   TOGETHER WITH STATEMENT OF
19                                   )   FACTS AND MEMORANDUM OF POINTS
                                     )   A N D   A U T H O R I T I E S ,   A N D
20                                   )   GOVERNMENT'S MOTION FOR
                                     )   RECIPROCAL DISCOVERY
21                                   )
                                     )
22  _____ )

23       COMES NOW, the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

24  Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant U.S. Attorney, and hereby files

25  its Response and Opposition to defendant's above-referenced motion, along with Government's Motion

26  for Reciprocal Discovery.  Said response is based upon the files and records of the case, together with

27  the attached statement of facts and memorandum of points and authorities.

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.

**STATEMENT OF THE CASE**

On February 20, 2008, a federal grand jury returned a three-count indictment charging Defendant Scott Steven Scilagyi ("SCILAGYI") with being a felon in possession of a firearm in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2) (Count 1); knowingly and intentionally importing approximately 18 grams (approximately .04 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960 (Count 2); and knowingly failing to appear as required before the United States District Court, after having been released, in violation of Title 18, United States Code, Section 3146 (Count 3).

On February 25, 2008, the Defendant was arraigned on the Indictment and entered a plea of not guilty. The motion hearing is scheduled for April 1, 2008 at 2:00 p.m.

II

**STATEMENT OF THE FACTS**

A.    PRIMARY INSPECTION

On December 7, 2007, at approximately 2:15 p.m., Scilagyi, the driver of a gray 2008 Chevrolet Silverado pick up truck, with no license plates, entered the United States from Mexico at the San Ysidro, California Port of Entry, via primary lane #11. Jennifer MARTINEZ ("Martinez") was a passenger in the vehicle. Customs and Border Protection Officer (CBPO) Jesus Segovia approached the vehicle and received negative declarations from Scilagyi and Martinez. Both occupants stated that they were U.S. citizens. Martinez stated that she was born in Visalia, California and had lost her identification card. Scilagyi stated the two of them had been in an Ensenada, Mexico hotel for the past "couple of days" and were headed back to Visalia, CA. Both of them were asked twice what they were bringing into the United States and they both said "clothes." CBPO Segovia decided to escort the vehicle and occupants to the secondary lot for further inspection.

B.    SECONDARY INSPECTION

At the secondary inspection area, CBP Canine Enforcement Officer (CEO) Gene Smithburg was requested to utilize his Narcotics Detector Dog "Kurow" to screen the vehicle. "Kurow" alerted to the ashtray and compact disc binder in the front of the cab. CEO Smithburg discovered butts in the ashtray,

08cr0447-MLH

1   which smelled like marijuana.  CEO Smithburg also found a small electronic scale concealed in a

2   cigarette pack located in the glove box.  CEO Smithburg was also informed by another officer that

3   Martinez had an outstanding arrest warrant.  Martinez was arrested and taken into the security office.

4   CEO Smithburg asked Scilagyi what he was bringing into the United States and Scilagyi admitted he

5   had "some joints in the ashtray."  Scilagyi was escorted to the secondary office for a pat down search,

6   which was negative.

7           C.      HANDGUN FOUND

8           CEO Lucy Coburn assisted with the further inspection of the vehicle and discovered a handgun

9   wrapped in a white towel in between the driver's seat and front center counsel.  The handgun was turned

10  over to the CBP Branch Chief Christine Schneider, who made the weapon safe.  Chief Schneider noticed

11  the handgun was loaded and had two rounds in the barrel.  While unloading the handgun, Chief

12  Schneider asked the security officers which individuals had been taken from the vehicle where the gun

13  was discovered.  At that time, Scilagyi began to cry "hysterically" and said the gun did not belong to

14  him and that he had just purchased the vehicle.

15          D.      MARIJUANA FOUND

16          CBPO Jose Garibay conducted a 7-point inspection of the vehicle and discovered a green leafy

17  substance inside a CD case under the front seat arm rest.  The substance later field tested positive for

18  marijuana.  The marijuana was in a plastic baggy and weighed approximately 18 grams.  CBPO Garibay

19  also found marijuana under the rear seat in a metal container.

20          E.      DEFENDANT'S POST ARREST STATEMENTS

21          On December 7, 2007, at approximately 4:30 p.m., Scilagyi was escorted to a video taping

22  interview room.  Scilagyi was read his Miranda rights in the English language from a pre-printed

23  Miranda Rights form by ICE SA Martinez, as witnessed by Alcohol, Tobacco, Firearms and Explosives

24  (ATF) Special Agent Michael Cote.  Scilagyi waived his right to remain silent and indicated that he

25  would answer questions without an attorney present.  During the interview, Scilagyi admitted

26          That the marijuana discovered in the vehicle belonged to him.  That he did not have any
        knowledge of the firearm.  That he bought the vehicle recently and had paid cash for it with
27      money he inherited.  That he lent out the vehicle to a friend during the week and that the friend
        could have left the handgun inside the vehicle.

28

Scilagyi was crying throughout the interview and kept denying any knowledge of the handgun. Scilagyi stated that he does not own a handgun.

At approximately 6:10 p.m., Martinez was escorted to a video taping interview room.  Martinez was read her <u>Miranda</u> rights in the English language from a pre-printed <u>Miranda</u> rights form by ICE SA Martinez, as witnessed by ATF SA Cote.  Martinez waived her right to remain silent and indicated that she would answer questions without an attorney present.

> Martinez stated that she had seen Scilagyi with a handgun at a friend's house the previous Tuesday or Wednesday.  Martinez denied any knowledge of the handgun in the vehicle but admitted knowledge of the marijuana.  Martinez stated that she and Scilagyi had smoked marijuana recently.

F.    <u>SCILAGYI'S PRIOR CRIMINAL RECORD</u>

A criminal records check of Scilagyi revealed that in September of 2000, Scilagyi was convicted in Visalia, California Superior Court of CA Penal Code 487(A)-Grand Theft, a felony.

G.    <u>INTERSTATE NEXUS</u>

ATF SA Cote viewed the recovered firearm and described it as a .38 Caliber Derringer Model 38.  The firearm was manufactured in Miami, Florida.

Scilagyi was arrested and transported to the Metropolitan Correctional Center, San Diego, CA, for federal custody and judicial proceedings.  Jennifer Martinez was not arrested and released thereafter.

**III.**

**ARGUMENT**

A.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY,
       AND THE INDICTMENT SHOULD NOT BE DISMISSED

1.    **Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by United States District Judge Larry A. Burns on January 10, 2007.  Defendant's Memorandum of Points and Authorities filed March 3, 2008 at 11-26 (hereafter "Memorandum").[1]

---

[2] Defendant supplies a partial transcript of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  <u>See</u> Exhibit A to Memorandum (hereafter "Exhibit A").  Defendant also supplies a partial transcript of the grand jury proceedings which records the voir dire of several potential witnesses.  <u>See</u> Exhibit B to

(continued...)

1   Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir.

2   2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends

3   Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper

4   to the point that the Indictment should be dismissed.

5          In making the arguments concerning the two separate instructions, Defendant urges this Court

6   to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were

7   discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).   Concerning the first attacked

8   instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervisory powers

9   over grand jury procedures.    This is a practice the Supreme Court discourages as Defendant

10  acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's

11  operational separateness from its constituting court, it should come as no surprise that we have been

12  reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

13  procedure."). <u>Id.</u> <u>Isgro</u> reiterated:

14         [A] district court may draw on its supervisory powers to dismiss an indictment.
       The supervisory powers doctrine "is premised on the inherent ability of the federal
15     courts to formulate procedural rules not specifically required by the Constitution or
       Congress to supervise the administration of justice." <u>Before it may invoke this power,</u>
16     <u>a court must first find that the defendant is actually prejudiced by the misconduct.</u>
       Absent such prejudice – that is, absent "'grave' doubt that the decision to indict was free
17     from the substantial influence of [the misconduct]" – a dismissal is not warranted.

18  974 F.2d at 1094 (citation omitted, emphasis added).   Concerning the second attacked instruction, in an

19  attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution

20  as a reason to dismiss the Indictment.   <u>See</u> Memorandum at 26 ("A grand jury so badly misguided is no

21  grand jury at all under the Fifth Amendment.").   Concerning that kind of a contention, <u>Isgro</u> stated:

22         [A] court may dismiss an indictment if it perceives constitutional error that interferes
       with the grand jury's independence and the integrity of the grand jury proceeding.
23     "Constitutional error is found where the 'structural protections of the grand jury have
       been so compromised as to render the proceedings fundamentally unfair, allowing the
24     presumption of prejudice' to the defendant." Constitutional error may also be found "if
       [the] defendant can show a history of prosecutorial misconduct that is so systematic and
25     pervasive that it affects the fundamental fairness of the proceeding or if the independence
       of the grand jury is substantially infringed."

26

27  _____

28  (...continued)
       Memorandum (hereafter "Exhibit B").

08cr0447-MLH

1    974 F.2d at 1094 (citation omitted).[2/]

2         The portions of the two relevant instructions approved in Navarro-Vargas were:

3         You cannot judge the wisdom of the criminal laws enacted by Congress, that is,
         whether or not there should or should not be a federal law designating certain activity
4        as criminal.   That is to be determined by Congress and not by you.

5    408 F.3d at 1187, 1202.

6         The United States Attorney and his Assistant United States Attorneys will
         provide you with important service in helping you to find your way when confronted
7        with complex legal problems.   It is entirely proper that you should receive this
         assistance. If past experience is any indication of what to expect in the future, then you
8        can expect candor, honesty, and good faith in matters presented by the government
         attorneys.
9
     408 F.3d at 1187, 1206.
10
         Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional
11
     because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,
12
     then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/]  408 F.3d
13
     at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy
14
     or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury
15
     has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.
16
         Concerning the "United States Attorney and his Assistant United States Attorneys" instruction,
17
     the court stated:
18
         We also reject this final contention and hold that although this passage may
19       include unnecessary language, it does not violate the Constitution.   The "candor,
         honesty, and good faith" language, when read in the context of the instructions as a
20       whole, does not violate the constitutional relationship between the prosecutor and grand
         jury. . . .  The instructions balance the praise for the government's attorney by informing
21       the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the
22

23       _____

24            [3]  In Isgro, the defendants choose the abrogation of constitutional rights route when
         asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did
25       not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights
         sufficient to support the dismissal of the indictment."  (relying on Williams)).

26            [4]  The Court acknowledged that as a matter of fact jury nullification does take place, and
27       there is no way to control it.  "We recognize and do not discount that some grand jurors might in
         fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.
28       For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's
         motives are not open to examination."  408 F.3d at 1204 (emphasis in original).

prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

### 2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[5]

In line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence

---

[5] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

is sufficient. . . .'" Memorandum at 22.   Defendant contends that this addition to the approved instruction "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." Id. Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when excused prospective grand jurors.

In concocting the theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means.  Defendant contends that "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution."   Memorandum at 12.  This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e., disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6]  408 F.3d at 1204-06.  This other instruction bestows discretion on the grand jury not to

---

[6]  That instruction is not at issue here.  It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.   To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to

(continued...)

indict.[6/]  In finding this instruction constitutional, the court stated in words that ring true here: "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

---

(...continued)
> warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

> [7] The court upheld the instruction stating:
>
> This instruction does not violate the grand jury's independence.  The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.  As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

Exhibit A at 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the supplemental transcript excerpts (<u>see</u> United States' Appendix filed on March 4, 2008) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden she has to bear. "Absent such prejudice – that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

[T]here's a close association between the grand jury and the U.S. Attorney's Office.

. . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Exhibit A at 11.

[I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Exhibit A at 12.

1

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Exhibit A at 20.[7/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Exhibit A at 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Memorandum at 17. Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.

---

[8] Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 26.[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[9/] (emphasis added)). <u>See also</u>

---

[9]  The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)). <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

[10]  Note that in <u>Williams</u> the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. <u>See also</u> <u>United States v.</u>
(continued...)

1    United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the

2    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

3    prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing

4    Williams) (emphasis added)).

5          However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns

6    was a member of the United States Attorney's Office, and made appearances in front of the federal

7    grand jury.[10]  As such he was undoubtedly aware of the provisions in the United States Attorneys'

8    Manual ("USAM").[11]  Specifically, it appears he is aware of USAM Section 9-11.233, which states:

9              In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held
             that the Federal courts' supervisory powers over the grand jury did not include the
10           power to make a rule allowing the dismissal of an otherwise valid indictment where
             the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It
11           is the policy of the Department of Justice, however, that when a prosecutor
             conducting a grand jury inquiry is personally aware of substantial evidence that
12           directly negates the guilt of a subject of the investigation, the prosecutor must present
             or otherwise disclose such evidence to the grand jury before seeking an indictment
13           against such a person. While a failure to follow the Department's policy should not
             result in dismissal of an indictment, appellate courts may refer violations of the policy
14           to the Office of Professional Responsibility for review.

15   (Emphasis added.)[12]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

16   of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede

17   the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt

18

19   _____

20   (...continued)
     Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used
21   Williams' holding that the supervisory powers would not be invoked to ward off an attack on
     grand jury procedures couched in constitutional terms.  974 F.2d at 1096.
22

23      [11]  He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16,
     17-18.
24

25      [12]    The USAM is available on the World Wide Web at www.usdoj.gov/usao/
     eousa/foia_reading_room/ usam/index.html.
26

27      [13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if
     Judge Burns did not know of this provision in the USAM while he was a member of the
28   United States Attorney's Office, because of the accessability of the USAM on the Internet, as the
     District Judge overseeing the grand jury he certainly could determine the required duties of the
     United States Attorneys appearing before the grand jury from that source.

1    of a subject of the investigation' to the grand jury before seeking an indictment, see USAM §

2    9-11.233." (Emphasis added.)[13]

3        The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed

4    guidelines for United States Attorneys, does not create the constitutional crisis proposed by

5    Defendant. No improper presumption/inference was created when Judge Burns reiterated what he

6    knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the

7    cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no

8    "substantial" exculpatory evidence exists.[14] If it does exist, as mandated by the USAM, the evidence

9    should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having

10   his or her career destroyed by an Office of Professional Responsibility investigation. Even if there

11   is some nefarious slant to the grand jury proceedings when the prosecutor does not present any

12   "substantial" exculpatory evidence, because there is none, the negative inference created thereby in

13   the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no

14   "substantial" exculpatory evidence generated from its investigation or from submissions tendered by

15   the defendant.[15] There is nothing wrong in this scenario with a grand juror inferring from this state-

16

17       [14] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly,
     this new section does not bestow any procedural or substantive rights on defendants.
18

19           Under this policy, the government's disclosure will exceed its constitutional
             obligations. This expanded disclosure policy, however, does not create a general
20           right of discovery in criminal cases. Nor does it provide defendants with any
             additional rights or remedies.
21

22   USAM 9-5.001, ¶"E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.
     htm.
23

24       [15] Recall Judge Burns also told the grand jurors that:

25           [T]hese proceedings tend to be one-sided necessarily. . . . Because
             it's not a full-blown trial, you're likely in most cases not to hear the
26           other side of the story, if there is another side to the story.

27   Exhibit A at 19.

28       [16] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to
                                                                                    (continued...)

                                              14                          08cr0447-MLH

of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[16] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

---

(...continued)

assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

[17] The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

08cr0447-MLH

1    accused and is independent," which was also required by <u>Navarro-Vargas</u>. 408 F.3d at 1207.  In this

2    context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally

3    defective requiring dismissal of this indictment or any indictment.

4        The "duty bound" statement constitutional contentions raised by Defendant do not indicate

5    that the "'structural protections of the grand jury have been so compromised as to render the

6    proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

7    "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

8    pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

9    grand jury is substantially infringed."  <u>Isgro</u>, 974 F.2d at 1094 (citation omitted).  Therefore, this

10   Indictment, or any other indictment, need not be dismissed.

11       Moreover, unless Defendant can point to exculpatory evidence that the Government knew

12   about and failed to present to the grand jury, the Court should not order production of the grand jury

13   transcript of this case.

14       B.    <u>DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED</u>

15       The evidence will show that at the time of his apprehension, Scilagyi was properly advised

16   of his <u>Miranda</u> Rights.  Scilagyi stated he understood those rights and waived them.  The agent made

17   no threats or promises to induce Scilagyi to waive his rights.  The evidence will show that the waiver

18   was knowing and voluntary, and the statements were freely and voluntarily made.

19       C.    <u>DEFENDANT'S MOTION TO COMPEL DISCOVERY</u>
              <u>AND PRESERVE EVIDENCE</u>

20
21       The defendant has filed request for discovery and to preserve the evidence in this case.  To

     simplify the response, the various items sought have been broken down into the following categories:

22   (1) items to which the Government has no objection; and (2) items to which the defendant is not

23   entitled.

24       **(1) Brady Material.**  The Government has and will continue to perform its duty under <u>Brady</u>

25   to disclose material exculpatory information or evidence favorable to Defendant when such evidence

26   is material to guilt or punishment.  The Government recognizes that its obligation under <u>Brady</u> covers

27   not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify

28   on behalf of the United States.  <u>See</u> <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States</u>

1   v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not

2   requested by the defense.  Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10

3   (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable

4   probability that, had the evidence been disclosed to the defense, the result of the proceeding would

5   have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final

6   determination of materiality is based on the "suppressed evidence considered collectively, not item

7   by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

8          Brady does not, however, mandate that the Government open all of its files for discovery.

9   See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam).  Under Brady, the

10  Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence

11  (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the

12  defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995));

13  (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-

14  90 (9th Cir. 1999)

15  amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.

16  Attorney could not reasonably be imputed to have knowledge or control over.  See United States v.

17  Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

18         Brady does not require the Government "to create exculpatory evidence that does not exist,"

19  United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the

20  Government "supply a defendant with exculpatory information of which it is aware." United States

21  v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

22         **(2)  Any Proposed Rule 404(b) Evidence.**  The Government has already provided Defendant

23  with information regarding Defendant's known prior criminal offenses.  The Government will

24  disclose in sufficient time advance of trial, the general nature of any "other bad acts" evidence that

25  the Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b).  To the extent possible,

26  the Government will provide the Rule 404(b) evidence to Defendant within two weeks prior to trial.

27  The Government will also provide notice of all impeachment evidence by prior criminal convictions

28  as required by Fed. R. Evid. 609.

1    **(3) <u>Request for Preservation of Evidence</u>.** The Constitution requires the Government to

2    preserve evidence "that might be expected to play a significant role in the suspect's defense."

3    <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984). To require preservation by the Government, such

4    evidence must (1) "possess an exculpatory value that was apparent before the evidence was

5    destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable

6    evidence by other reasonably available means." <u>Id.</u> at 489; <u>see also</u> <u>Cooper v. Calderon</u>, 255 F.3d

7    1104, 1113-14 (9th Cir. 2001).

8        The United States will make every effort to preserve evidence it deems to be relevant and

9    material to this case. Any failure to gather and preserve evidence, however, would not violate due

10   process absent bad faith by the Government that results in actual prejudice to the Defendant. <u>See</u>

11   <u>Illinois v. Fisher</u>, _ U.S._ , 124 S.Ct. 1200 (2004) (per curiam); <u>Arizona v. Youngblood</u>, 488 U.S. 51,

12   57-58 (1988); <u>United States v. RIVERA-Relle</u>, 322 F.3d 670 (9th Cir. 2003); <u>Downs v. Hoyt</u>, 232

13   F.3d 1031, 1037-38 (9th Cir. 2000).

14   **(4) <u>Defendant's Statements</u>.** The Government recognizes its obligation under Rules

15   16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements

16   and Defendant's written statements. The Government has produced all of Defendant's statements

17   that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers

18   additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule

19   16(a)(1)(B), such statements will be provided to Defendant.

20       The Government has no objection to the preservation of the handwritten notes taken by any

21   of the agents and officers. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents

22   must preserve their original notes of interviews of an accused or prospective government witnesses).

23   However, the Government objects to providing Defendant with a copy of the rough notes at this time.

24   Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have

25   been accurately reflected in a type-written report. <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590

26   (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not

27   require disclosure of an agent's notes even where there are "minor discrepancies" between the notes

28   and a report). The Government is not required to produce rough notes pursuant to the Jencks Act,

because the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. <u>See</u> <u>United States v. Ramirez</u>, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not <u>Brady</u> material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3rd Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

**(5)** **Tangible Objects.** As previously discussed, the Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(6)** **Expert Witnesses.** The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This shall include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons for those opinions.

**(7)** **Witness Addresses.** The Government will provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in

a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial.  See Weatherford v. Bursey, 429 U.S. , 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992), citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness.  "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Yung, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980).

**(8)   Jencks Act Material.**  The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §  3500(b).  A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(9) Informants and Cooperating Witnesses.**  At this time, the Government is not aware of any confidential informants or cooperating witnesses involved in this case.  The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's

1    identity is required under <u>Roviaro</u>.  <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th

2    Cir. 1997).  If the Government determines that there is a confidential informant somehow involved

3    in this case, the Government will either disclose the identity of the informant or submit the

4    informant's identity to the Court for an in-chambers inspection.  The Government recognizes its

5    obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach

6    Government witnesses.

7    **(10) <u>Specific Request to View A-Files of Material Witnesses</u>.**  As previously discussed, the

8    Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could

9    be used to impeach Government witnesses.

10    **(11) <u>Residual Request</u>.**  The Government will comply with all of its discovery obligations,

11    but objects to the broad and unspecified nature of Defendant's residual discovery request.

12    D.    <u>DEFENDANT'S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS</u>

13    The Government does not oppose Defendant's request to file further motions if they are based

14    on new discovery or other information not available to Defendant at the time of this motion hearing.

15    The Government requests leave to file additional response and opposition papers in the event the

16    defendant is granted leave to file additional motions.

17    E.    <u>GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY</u>

18    1.    <u>Rule 16(b)</u>

19    The defendant has invoked Federal Rule of Criminal Procedure 16 in his motion for

20    discovery.  The Government has voluntarily complied with the requirements of Federal Rule of

21    Criminal Procedure 16(a).  Thus, the 16(b) provision of that rule, pertinent portions of which are cited

22    below is applicable:

23    The Government hereby requests the defendant permit the Government to inspect, copy, and

24    photograph any and all books, papers, documents, photographs, tangible objects, or make copies of

25    portions thereof, which are within the possession, custody, or control of the defendant and which he

26    intends to introduce as evidence in his case-in-chief at trial.

27    The Government further requests that it be permitted to inspect and copy or photograph any

28    results or reports of physical or mental examinations and of scientific tests or experiments made in

1   connection with this case, which are in the possession or control of the defendant, which he intends

2   to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendant

3   intends to call as a witness.  The Government also requests that the Court make such orders as it

4   deems necessary under Rules 16(d)(1) and (2) to insure that the Government receives the discovery

5   to which it is entitled.

6           2.     Rule 26.2

7           Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all

8   witnesses, except the defendant.  The new rule thus provides for the reciprocal production of <u>Jencks</u>

9   statements.  The Government hereby requests that the defendant be ordered to supply all prior

10  statements of defense witnesses by a reasonable date before trial to be set by the Court.  This order

11  should include any form these statements are memorialized in, including but not limited to, tape

12  recordings, handwritten or typed notes, and reports.

**IV.**

**CONCLUSION**

15          For the foregoing reasons, Defendant's motions should be denied.

16          DATED:  March 31, 2008

17                                                  Respectfully Submitted,

18                                                  KAREN P. HEWITT
                                                    United States Attorney

20                                                  s/ Randy K. Jones
                                                    RANDY K. JONES
21                                                  Assistant United States Attorney
                                                    Attorneys for Plaintiff
22                                                  United States of America
                                                    Email: randy.jones2@usdoj.gov

1   KAREN P. HEWITT
    United States Attorney
2   RANDY K. JONES
    Assistant U.S. Attorney
3   California State Bar No. 141711
    Federal Office Building
4   880 Front Street, Room 6293
    San Diego, California  92101-8893
5   Telephone: (619) 557-5684; (619) 557-7381
    randy.jones2@usdoj.gov
6
    Attorneys for Plaintiff
7   United States of America

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          )          Case No. 08CR0447-MLH
                                       )
11                   Plaintiff,        )
                                       )
12          v.                         )
                                       )          CERTIFICATE OF SERVICE
13  SCOTT STEVEN SCILAGYI,             )
                                       )
14                   Defendant.        )
                                       )
15  _____)

16  IT IS HEREBY CERTIFIED THAT:

17          I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age.
18  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

            I am not a party to the above-entitled action. I have caused service of United States' Response
19  and Opposition to Defendant's Motions Together with Statement of Facts and Memorandum of
    Points and Authorities, and Government's Motion for Reciprocal Discovery on the following party
20  by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which
    electronically notifies them.
21
            1.  Norma A. Aguilar     E-mail: norma_aguilar@fd.org
22

23          I declare under penalty of perjury that the foregoing is true and correct.

24          Executed on  March 31, 2008

25
                                        s/ Randy K. Jones
26                                      RANDY K. JONES

27

28

                                                                              08cr0447-MLH